

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| ERIN COLE and NICK KAUFMAN, § | |
| § | |
| Claimants/Appellees, § | |
| § | |
| v. § | CIVIL ACTION NO. 6:05-1029-HFF |
| § | |
| LONG JOHN SILVER'S RESTAURANTS, § | |
| INC. and LONG JOHN SILVER'S, INC. § | |
| § | |
| Respondents/Appellants. § | |

MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

This is an action to vacate a decision of an arbitrator which found that Claimants could arbitrate their claims against Respondents as a class. Respondents assert that this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1337(a). Claimants contend that the Court lacks jurisdiction. Currently pending before the Court is Respondents' motion to vacate the arbitrator's decision. For the reasons stated below, the Court will dismiss this action.

## II.   FACTUAL AND PROCEDURAL HISTORY

Claimant Erin Cole and Claimant Nick Kaufman (collectively "Claimants") are former employees of Respondent Long John Silver's Restaurants, Inc. and Respondent Long John Silver's, Inc. (collectively "Respondents"). During the tenure of Claimants' employment, Respondents

instituted a mandatory arbitration procedure covering all disputes between themselves and their employees. On December 19, 2003, Claimants initiated a collective arbitration proceeding before the American Arbitration Association (AAA) in which they alleged that Respondents had violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, by failing to pay Claimants and similarly-situated employees overtime pay which they were due. Initially, the arbitrator necessarily conducted a "clause construction hearing" to determine whether the arbitration agreement between Claimants and Respondents permitted the former to arbitrate their claims in a collective, class proceeding. *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) (*Bazzle* II) (decision of whether arbitration agreement permits class proceedings is for arbitrator not courts). While Claimants argued that the arbitration agreement was silent or, at the most, ambiguous as to whether arbitration as a class would be permitted, Respondents claimed that the language of the agreement, as well as its structure, indicated that class arbitration was not contemplated by the agreement. In addition, Respondents asserted that class arbitration would be inconsistent with the FLSA and the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq*.

After analyzing the contentions of both parties, the arbitrator found that the arbitration agreement was silent or ambiguous as to whether class arbitration was permitted. The arbitrator next proceeded to analyze the arbitration agreement using principles of contract construction, and, in so doing, he relied on the reasoning of the Supreme Court of South Carolina in *Bazzle v. Green Tree Financial Corp.*, 569 S.E.2d 349 (S.C. 2002) (*Bazzle* I). The arbitrator concluded that, despite the United States Supreme Court's vacatur of the South Carolina Supreme Court's *Bazzle* I decision, that case's analysis of arbitration agreements under South Carolina law remained controlling. Thus, applying the reasoning of *Bazzle* I, the arbitrator found that the arbitration agreement's silence or

2

ambiguity on the issue of proceeding as a class led to the conclusion that collective action was permitted. The arbitrator noted, however, that even without the "imprimatur" of *Bazzle* I, the reasoning of other courts on which *Bazzle* I was based carried more persuasive force than conflicting precedent which held that silence or ambiguity in an arbitration agreement necessarily meant that the right to proceed in a class action had been abandoned or negotiated away. Finally, the arbitrator also pointed out that nothing in the FLSA or the FAA precluded class arbitration of claims and that contract law principles of unconscionability favored an interpretation of the contract so as to permit collective action.

After rendering his decision, the arbitrator, pursuant to the AAA's rules governing clause construction awards, stayed the arbitration proceedings for thirty days to permit judicial review of his decision to permit Claimants to proceed as a class. Respondents subsequently filed this action seeking to vacate the arbitrator's clause construction award.

### III.   CONTENTIONS OF THE PARTIES

In the instant case, Respondents assert that the arbitrator acted in manifest disregard of the law by permitting Claimants to proceed collectively against Respondents. Specifically, Respondents argue that the arbitrator applied incorrect precedent in interpreting the arbitration agreement and that the FLSA and the FAA prohibit class arbitration of claims. In response to Claimants' contention that the Court lacks jurisdiction, Respondents attempt to invoke the jurisdiction of this Court based on both the presence of a federal question and diversity of citizenship. Claimants, on the other hand, oppose vacatur of the award and suggest that the Court lacks jurisdiction over this action. They contend that the arbitrator correctly applied precedent–in the form of *Bazzle* I–to find that class

arbitration of claims was permitted. They further maintain that no substantial federal question exists and that Respondents have not satisfied the amount in controversy requirement for diversity jurisdiction.

## IV.    STANDARD OF REVIEW

In the instant case, Claimants have questioned the existence of the Court's jurisdiction over Respondents' motion to vacate the arbitrator's award. Although Claimants have not formally filed a motion attacking subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the Court considers the question of whether it may exercise jurisdiction over Respondents' motion pursuant to the standards applicable to a 12(b)(1) motion. *Cf. St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ("Like other challenges to a court's subject matter jurisdiction, motions raising the ripeness issue are treated as brought under Rule 12(b)(1) even if improperly identified by the moving party as brought under Rule 12(b)(6)."); *see generally* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2004) (lack of subject matter jurisdiction may be asserted in an answer or as a suggestion to the court).

A party seeking to invoke federal jurisdiction bears the burden of demonstrating that a basis for jurisdiction exists. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). In determining whether this burden has been satisfied, the Court may proceed in one of two ways: (1) the Court may find insufficient allegations in the pleadings or (2) the Court may conduct an evidentiary hearing and weigh the evidence to determine if jurisdiction exists. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.

1982).  In cases where the Court considers only the allegations in the pleadings, it must view all disputed facts in a light most favorable to the party asserting jurisdiction.  *Lovern*, 190 F.3d at 654.[1]

## V.     DISCUSSION

Because a determination of subject matter jurisdiction at the outset of litigation promotes judicial efficiency, *see id.*, the Court first examines Claimants' argument that subject matter jurisdiction over Respondents' motion is lacking.  Respondents assert two bases for jurisdiction: the existence of a federal question and diversity of citizenship.  The Court finds that neither supports federal jurisdiction.

### A.     Federal Question Jurisdiction

Federal question jurisdiction exists over civil actions "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Most civil actions will arise under the laws of the United States when the cause of action is created by federal law.  A smaller number of claims, however, will lie where no federal cause of action is created but where a case or controversy–which would otherwise be heard by the state courts–presents a significant federal issue for adjudication.  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S.Ct. 2363, 2366-67 (2005).  In the instant case, Respondents seemingly assert that the Court has jurisdiction under both "arising under" formulations, and the Court will consider each in turn.

---

[1] Because the Court determines that it lacks jurisdiction over the present action, it does not reach the merits of Respondents' claim and, so, does not review the arbitrator's decision.

> 1.  *Cause of action created by federal law*

Respondents first contend that the FAA creates a private right of action for review of the decisions of arbitrators on the applicability and construction of arbitration agreements. Specifically, Respondents urge that the arbitrator's decision in the instant case is erroneous and was made in manifest disregard of federal law.

Although the language of the FAA appears to open the federal courts to these claims, the Supreme Court has unequivocally held that the FAA creates no federal cause of action to enforce its terms. *Southland Corp. v. Keating*, 465 U.S. 1, 15 n.9 (1984) (FAA "does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise." (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 n.32 (1983))).  The Fourth Circuit Court of Appeals has affirmed this rule with respect to § 4 of the FAA, *Discover Bank v. Vaden*, 396 F.3d 366, 368 (4th Cir. 2005), and courts of appeals in other circuits have extended its reasoning to §§ 9-10 of the FAA, *Peabody Coal Co. v. Navajo Nation*, 373 F.3d 945, 952 n.5 (9th Cir. 2004) ("It is well settled that the provisions of 9 U.S.C. § 9 do not by themselves confer subject matter jurisdiction."); *Czarina, LLC v. W.F. Poe Syndicate*, 358 F.3d 1286, 1290-94 (11th Cir. 2004) (same); *City of Detroit Pension Fund v. Prudential Sec., Inc.*, 91 F.3d 26, 29 (6th Cir. 1996) (same); *Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1110-11, n.3 (9th Cir. 2004) (stating that § 10 does not in and of itself establish federal jurisdiction); *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 26 (2d Cir. 2000) (same); *Kasap v. Folger, Nolan, Fleming, & Douglas, Inc.*, 166 F.3d 1243, 1247 (D.C. Cir. 1999) (same); *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1472 (11th Cir. 1997) (same); *Minor v. Prudential Sec., Inc.*, 94 F.3d 1103, 1105-06 (7th Cir. 1996) (same); *Ford v. Hamilton Invests., Inc.*, 29 F.3d 255, 257-58 (6th Cir. 1994) (same). The Court finds the reasoning

6

employed and the rule adopted by these courts to be both well founded and well settled. Accordingly, the Court adopts the view that the FAA does not support federal question jurisdiction and finds that, here, Respondents' motion must be supported by some independent ground of jurisdiction.

### 2. *Substantial question of federal law*

Despite Respondents' failure to establish that federal law creates a cause of action, they may nonetheless invoke federal jurisdiction by demonstrating that a significant federal interest adheres to their motion to vacate the arbitrator's award. Respondents attempt to make this showing by alleging that the arbitrator's conclusion that the arbitration agreement permits Claimants to proceed collectively conflicts with the FAA and with the FLSA. An examination of the relevant law, however, indicates that neither the FAA nor the FLSA is sufficiently relevant to the arbitrator's decision to implicate a significant issue of federal law.

Prior to the United States Supreme Court's decision in *Bazzle* II, the question of whether the FAA provided default rules governing the availability of class arbitration where the arbitration agreement was silent or ambiguous was an unsettled question. In *Bazzle* II, however, the Court firmly rejected the notion that the FAA has any bearing on this issue. Rather, the Court held that state law controlled questions of proceeding collectively under an arbitration agreement. *Bazzle* II, 539 U.S. at 447 (holding that whether contracts were silent on issue of arbitration was a "matter of state law"); *see also id.* at 454-55 (Stevens, J., concurring in the judgment) (noting that nothing in the FAA precludes interpretation of arbitration contracts' provisions regarding class arbitration). Thus, no significant federal issue can be said to remain on whether the FAA prohibits a finding that state law permits class arbitration. *See Grable & Sons,* 125 S.Ct. at 2368 (noting that a claim must

"necessarily raise a stated federal issue, actually disputed and substantial," to qualify for federal question jurisdiction); *see also Lovern*, 190 F.3d at 654 (holding that a federal issue must be "substantial" to invoke jurisdiction under 28 U.S.C. § 1331).[2]

Respondents also attempt to preserve the FAA as a jurisdictional hook by asserting that the arbitrator used the doctrine of unconscionability to "rewrite" or "reform" their arbitration agreements and so violated the FAA's division of labor between arbitrators and the courts. It appears to the Court that this attempt to invoke the FAA likewise fails because its seeks to base jurisdiction solely on the FAA and not on an independent source of federal jurisdiction. As noted above, this conflicts with well settled precedent to the contrary. However, even if the arbitrator's use of equitable powers to reform an unconscionable contract did present an issue cognizable in federal court under the FAA, the Court would not find jurisdiction here because the arbitrator's decision is not premised solely on his use of the doctrine of unconscionability. Instead, other independent grounds comfortably support the arbitrator's finding that the agreement does not prohibit class arbitration (such as his application of *Bazzle* I's interpretation of South Carolina law and his independent application of California precedent). *See Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816-17 (4th Cir. 2004) (en banc) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988)) ("[I]f the plaintiff can support his claim with even one theory which does not call for an interpretation of federal law, his claim does not 'arise under' federal law for purposes of § 1331.")

---

[2] The Court also notes that even where a substantial federal issue exists, it is "still subject to a possible veto," in that it will "qualify for the a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable & Sons*, 125 S.Ct. at 2367. In the present case, Congress' intent undoubtedly was to leave enforcement of the FAA "in large part to the state courts." *Moses H. Cone*, 460 U.S. at 26 n.32.

8

Respondents' allegation that the arbitrator improperly used the doctrine of unconscionability forms part of their larger allegations that the arbitrator abused his powers by acting in manifest disregard of the FAA. As already noted, the FAA creates no cause of action providing a basis for jurisdiction over these claims. Further, the Court agrees with its sister courts which have found that allegations of misconduct on the part of an arbitrator do not implicate a substantial federal question under the FAA. *See, e.g., Baltin*, 128 F.3d at 1472 ("[A] motion to vacate on the grounds of fraud, corruption, undue means, evident partiality, and failure to consider pertinent and material evidence does not require the resolution of any federal issue, let alone a substantial question of federal law." (quoting *Minor*, 94 F.3d at 1105)); *see also Choice Hotels Int'l, Inc. v. Felizardo*, 278 F.Supp. 2d 590 (D.Md. 2003).

In summary, Respondents' attempts to invoke the FAA as a basis for jurisdiction fail because the sole issue presented to this Court is whether the arbitration agreement permits Claimants to proceed as a class against Respondents. The resolution of this issue relies principally–if not exclusively–on state law governing the interpretation of contracts. Perhaps to circumnavigate this barrier, Respondents assert that the FLSA presents a significant federal issue for the Court to consider. It is true that a court must look beyond the narrow issue presented in a motion seeking review of an arbitration award to the underlying issue at stake in the arbitration in order to determine whether a federal question exists. *Discover Bank*, 396 F.3d at 373. Respondents, however, do not attempt to assert Claimants' underlying FLSA claims as a basis for jurisdiction but instead argue that the arbitrator's decision permitting a class action "erroneously applies, or manifestly disregards, the

9

FLSA."[3]  Resps' Reply Memorandum in Support of Motion to Vacate at 3 n.2.  In support of this argument, Respondents cite cases holding that the right of employees to proceed as a class under the FLSA may be waived or surrendered in an arbitration agreement.  The rules established in these cases are inapposite to the situation presented by the facts in the instant case.  Here, the arbitrator did not conclude that the right to proceed as a class under the FLSA formed a basis for allowing Claimants to pursue collective arbitration against Respondents.  Rather, the arbitrator found the source of Claimants' collective rights in principles drawn from the common law of contract.  Moreover, as the arbitrator noted, Respondents have attempted to argue that, because the FLSA's provisions for collective action are not automatically incorporated into an arbitration agreement, silence in the arbitration agreement, *ipso facto*, leads to the conclusion that class arbitration is not permitted.  The Court not only agrees with the arbitrator that the cases cited by Respondents do not support this conclusion but also finds no law to support Respondents' contention.  Thus, the Court must once again conclude that Respondents' invocation of federal jurisdiction–here under the FLSA–is far too attenuated to present a substantial federal question for the Court to decide.  *See Lovern*, 190 F.3d at 654 ("The mere assertion of a federal claim is not sufficient to obtain jurisdiction under 28 U.S.C. [§] 1331").[4]

---

[3]  Even if Respondents did base jurisdiction on Claimants' underlying FLSA claims, the Court would nonetheless conclude that jurisdiction did not exist.  At the present juncture, the sole decision made by the arbitrator is whether the arbitration agreement permits Claimants to proceed as a class.  The Court's review of this decision is too far removed and too tangentially related to Claimants' allegations of FLSA violations to support jurisdiction.  *Lovern*, 190 F.3d at 654 (holding that federal jurisdiction requires that a party assert a substantial federal claim).

[4] The fact that the Court lacks jurisdiction over this action under 28 U.S.C. § 1331 necessarily leads to the conclusion that the Court likewise lacks jurisdiction under 28 U.S.C. § 1337.  *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 8 n.7 (1983) ("[W]e have not distinguished between the arising under standards of § 1331 and § 1337.")

B.     **Diversity of Citizenship**

The federal courts may exercise jurisdiction over a case or controversy in which the parties are citizens of different states and in which the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. In the instant case, it is undisputed that complete diversity exists. The only question facing the Court is whether the jurisdictional amount has been met. The Court concludes that it has not.

A party seeking to invoke the jurisdiction of the court bears the burden of pleading facts sufficient to show that the amount in controversy has been satisfied. *Schlesinger v. Councilman*, 420 U.S. 738, 744 n.9 (1975) (a complaint is fatally defective unless it contains a proper allegation of the amount in controversy). While a party's good faith allegation that the matter in controversy exceeds the jurisdictional amount is generally sufficient to satisfy the amount in controversy requirement, *Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218 (7th Cir. 1995), if challenged, the allegation must be supported by a showing that it does not appear to a legal certainty that the claim for relief is for less than the statutorily prescribed jurisdictional amount. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1996). In the instant case, Respondents initially asserted that "[t]he matter in controversy exceeds the sum specified by 28 U.S.C. § 1332." Resps' Preliminary Memorandum in Support of Motion to Vacate at 3. Once challenged by Claimants, Respondents were obliged to provide more.

Here, as there are two layers to the controversy at stake, the amount in controversy could be measured from two different points of view. First, the Court could view the controversy as encompassing only the first layer: the immediate, narrow issue of whether class arbitration is

11

permitted under the arbitration agreement. This approach finds some support in case law. *E.g., Lanham Ford, Inc. v. Ford Motor Co.*, 101 Fed. App'x. 381, 382 (4th Cir. 2004) (holding that district court should view amount in controversy from point of view of the immediate, narrower goal of litigation rather than the ultimate, underlying goal). The second option open to the Court is to peel back the first layer and measure the amount in controversy from the point of view of the underlying FLSA claims at issue in the arbitration. This method has been suggested by Judge Niemeyer in a dissenting opinion. *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 199 (4th Cir. 1999) (Niemeyer, J., dissenting).[5] The Court finds, however, that it need not adopt either of the two methods of evaluating the amount in controversy because Respondents fail to meet their obligation to show that it does not appear to a legal certainty that the amount in controversy is $75,000 or below when viewed from either viewpoint.

As to the narrow issue of whether class arbitration is permitted, Claimants' assertion that this issue involves no monetary award must be rejected. Although no damages will be awarded as a result of the arbitrator's decision to permit class arbitration, the decision will have a financial impact on Respondents, and it is this financial impact which must be measured. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977) (holding that when plaintiff seeks declaratory relief, amount in controversy is measured by the value of the object of the litigation); *Gov't. Emp. Ins. Co v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964) ("[T]he amount in controversy is the pecuniary result to either party which [the] judgment would produce.") Respondents, however, fail to make any showing as to the amount of this financial impact. Instead, they rest on conclusory

---

[5] Although explicitly asserted only by Judge Niemeyer in his dissent, the majority in *Friedman's* implicitly accepted this rationale. *See id.* at 195 n.3 ("We agree with our colleague that there was diversity and that the amount in controversy requirement was met.")

12

statements that class arbitration will be "extremely costly and prolonged" and that the amount in controversy is "unquestionably satisfied." Resps' Reply Memorandum in Support of Motion to Vacate at 4-5. Respondents must present more than this to meet the legal certainty test of *St. Paul Mercury*. The Court would be forced to engage in mere speculation if it accepted Respondents' unsupported claims that the jurisdictional amount is satisfied by the arbitrator's decision allowing Claimants to proceed collectively.[6]

Second, as to the broader issue of Claimants' underlying FLSA claims which form the subject of the arbitration, Respondents likewise fail to offer any evidence as to the amount of money sought by Claimants individually, much less as a class. Again, the Court would be forced to speculate as to the value of Respondents' potential liability to Claimants, and the Court is in no position to engage in this exercise.

Because Respondents fail to demonstrate that it does not appear to a legal certainty that the amount in controversy has not been satisfied, the Court must conclude that the jurisdictional requirements of 28 U.S.C. § 1332 have not been established.

## VI.     CONCLUSION

Based on the foregoing, and after a thorough review of the record and the relevant law, the Court concludes that it lacks subject matter jurisdiction over Respondents' motion to vacate the

---

[6] In addition, the Court would be forced to assume, first, that the arbitrator would certify a class and, second, that this class would be of sufficient size to cause the difference in Respondents' litigation costs in defending a class action versus an individual action to exceed $75,000. Nothing in the record justifies the Court making this assumption.

arbitrator's clause construction award. Accordingly, the Court finds that Respondents' motion should be, and hereby is, **DISMISSED**.

    **IT IS SO ORDERED.**

Signed this 15th day of September, 2005, in Spartanburg, South Carolina.

                                                    s/ Henry F. Floyd
                                                    HENRY F. FLOYD
                                                    UNITED STATES DISTRICT JUDGE